**Nos. 21-50303, 21-50305**

———————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————

## UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

## JOSE GAMBINO-RUIZ,

Defendants-Appellants.

————

Appeal from the
United States District Court
for the Southern District of California
Honorable Larry A. Burns Presiding

————

## APPELLANT'S OPENING BRIEF

————

Kara Hartzler CSB 293751
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Kara_Hartzler@fd.org

Attorneys for Appellants

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ............................................................................ 1

STATEMENT OF JURISDICTION AND BAIL STATUS ...................... 3

ISSUES PRESENTED FOR REVIEW ...................................... 3

    I.    Whether Mr. Gambino-Ruiz's underlying removal order was invalid because he was not subject to expedited removal. ................................................................... 3

    II.    Whether the district court applied the correct factors to determine whether to grant Mr. Gambino-Ruiz an acceptance of responsibility adjustment................................. 3

STATUTORY AND GUIDELINES PROVISIONS................................... 3

STATEMENT OF THE FACTS ............................................................. 5

    I.    Mr. Gambino-Ruiz crosses the border and is placed in expedited removal proceedings. ............................................ 5

    II.    The government later relies on these expedited removal orders to prosecute Mr. Gambino-Ruiz for illegal reentry. ......................................................... 7

    III.    Mr. Gambino-Ruiz challenges the validity of his expedited removal order. ......................................... 8

    IV.    The district court denies Mr. Gambino-Ruiz's challenge to his expedited removal. ................................................... 10

    V.    At trial, Mr. Gambino-Ruiz does not call any witnesses or present an affirmative case. ........................................... 11

    VI.    At sentencing, the district court declines to grant a downward adjustment for acceptance of responsibility. ...... 11

i

SUMMARY OF THE ARGUMENT ......................................................... 13

ARGUMENT ...................................................................................... 15

    I.    Mr. Gambino-Ruiz's underlying removal order was
invalid. ................................................................................. 15

        A.    Standard of review ....................................................... 15

        B.    The government had no statutory authority to
deport Mr. Gambino-Ruiz in an expedited
removal. .......................................................................... 15

               1.    *Torres* held that expedited removal only
applies to people seeking admission at a
port of entry ........................................................ 15

               2.    Under *Torres*, expedited removal *cannot*
apply to people inside the U.S. who
unlawfully entered. .............................................. 18

               3.    The district court's conclusions to the
contrary were wrong. ........................................... 28

        C.    Mr. Gambino-Ruiz's unlawful removal satisfies
the requirements of § 1326(d). .................................... 34

               1.    Mr. Gambino-Ruiz had no right to
administrative remedies or judicial review ........ 35

               2.    Mr. Gambino-Ruiz's removal order was
fundamentally unfair. .......................................... 36

        D.    Alternatively, the prior removal order is a legal
nullity that cannot sustain a § 1326 conviction. ......... 39

    II.    The district court's use of the wrong legal standard to
deny Mr. Gambino-Ruiz acceptance of responsibility
requires remand. ................................................................ 42

        A.    Standard of review ....................................................... 42

B.    The district court did not apply the correct factors to determine whether to grant Mr. Gambino-Ruiz acceptance of responsibility. ....................................... 42

CONCLUSION .......................................................................... 48

CERTIFICATE OF RELATED CASES ................................. 50

CERTIFICATE OF COMPLIANCE ....................................... 51

# TABLE OF AUTHORITIES

**Federal Cases**                                             **Page(s)**

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
734 F.3d 1175 (D.C. Cir. 2013) .................................................... 40

*Dep't of Homeland Sec. v. Thuraissigiam*,
140 S. Ct. 1959 (2020) ........................................ 10, 28, 29, 30, 31

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421 (1987) ....................................................................... 26

*Kaganovich v. Gonzales*,
470 F.3d 894 (9th Cir. 2006) ......................................................... 1

*Marques v. Lynch*,
834 F.3d 549 (5th Cir. 2016) ....................................................... 18

*Nestle USA, Inc. v. Doe*,
141 S. Ct. 1931 (2021) .................................................................. 32

*Noriega-Lopez v. Ashcroft*,
335 F.3d 874 (9th Cir. 2003) .................................................. 40, 41

*Ortiz-Bouchet v. U.S. Attorney General*,
714 F.3d 1353 (11th Cir. 2013) (per curiam) .............................. 18

*Permanent Mission of India to United Nations v. City of New York*,
551 U.S. 193 (2007) ....................................................................... 1

*S.E.C. v. Ross*,
504 F.3d 1130 (9th Cir. 2007) ..................................................... 40

*Torres v. Barr*,
976 F.3d 918 (9th Cir. 2020) (en banc) .............................. *passim*

*United States v. Aguilera-Rios*,
769 F.3d 626 (9th Cir. 2014) ....................................................... 38

*United States v. Barajas-Alvarado*,
655 F.3d 1077 (9th Cir. 2011) ................................................ 35, 36

*United States v. Corrales-Vazquez,*
 931 F.3d 944 (9th Cir. 2019) ...................................................... 25

*United States v. De La Mora-Cobian,*
 18 F.4th 1141 (9th Cir. 2021) ................................................... 36

*United States v. Green,*
 940 F.3d 1038 (9th Cir. 2019) ................................................... 42

*United States v. Mayren,*
 __ F. Supp. 3d __, No. CR 20-054-DSF, 2022 WL 4480568 (C.D.
 Cal. Mar. 16, 2022) ............................................................ 26, 37, 38

*United States v. Mayren,*
 No. CR 20-00054-DSF, 2022 WL 4480567
 (C.D. Cal. Aug. 1, 2022) ................................................................ 27

*United States v. McKinney,*
 15 F.3d 849 (9th Cir. 1994) ................................................. 44, 48

*United States v. Mendoza-Lopez,*
 481 U.S. 828 (1987) ...................................................................... 34

*United States v. Mohrbacher,*
 182 F.3d 1041 (9th Cir. 1999) ................................................... 47

*United States v. Muro–Inclan,*
 249 F.3d 1180 (9th Cir. 2001) ................................................... 15

*United States v. Ochoa-Oregel,*
 904 F.3d 682 (9th Cir. 2018) ............................................... 38, 39

*United States v. Pallares-Galan,*
 359 F.3d 1088 (9th Cir. 2004) ................................................... 15

*United States v. Palomar-Santiago,*
 141 S. Ct. 1615 (2021) ......................................................... 35, 36

*United States v. Ramos,*
 623 F.3d 672 (9th Cir. 2010) ............................................... 36, 37

*United States v. Raya-Vaca,*
 771 F.3d 1195 (9th Cir. 2014) ................................................... 35

*United States v. Tuan Ngoc Luong,*
965 F.3d 973 (9th Cir. 2020) ........................................... 42, 45–46

*United States v. Ubaldo-Figueroa,*
364 F.3d 1042 (9th Cir. 2004) ................................. 34, 36

*United States v. Valdez-Novoa,*
780 F.3d 906 (9th Cir. 2015) ...................................... 39

*United States v. Valdivia-Flores,*
876 F.3d 1201 (9th Cir. 2017) .................................... 39

*Landon v. Plasencia,*
459 U.S. 21 (1982) ....................................................... 33

*Webster v. Fall,*
266 U.S. 507 (1925) ..................................................... 30

## Other Cases

Brief of Respondent*, Department of Homeland Security v. Thuraissigiam,* Case No. 19-161,
2020 WL 353476 (2020) ............................................. 30

## Federal Statutes

8 U.S.C. § 1182 ........................................................ *passim*
8 U.S.C. § 1225 ........................................................ *passim*
8 U.S.C. § 1228 ............................................................... 32
8 U.S.C. § 1229a ................................................. 32, 38, 40
8 U.S.C. § 1231 ............................................................... 32
8 U.S.C. § 1252 ......................................................... 35, 36
8 U.S.C. § 1325 ............................................................... 25
8 U.S.C. § 1326 ........................................................ *passim*
18 U.S.C. § 3231 .............................................................. 3

## Federal Rules

Fed. R. App. P. 4 .............................................................. 3

**Federal Regulations**

8 C.F.R. § 1001.1 ................................................................ 24

**United States Sentencing Guidelines**

U.S.S.G. § 3E1.1 ..................................................... *passim*

**Other Authorities**

Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877 (2004) ............................................................................ 22

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | U.S.C.A. No. 21-50303, 21-50305 |
| Plaintiff-Appellee, | U.S.D.C. No. 20-CR-3124-LAB |
| | U.S.D.C. No. 20-CR-10144-LAB |
| v. | |
| JOSE GAMBINO-RUIZ, | **APPELLANT'S OPENING BRIEF** |
| Defendant-Appellant. | |

## INTRODUCTION

"We begin, as always, with the text of the statute."[1] This common judicial refrain—and a recent opinion by a unanimous en banc panel—dictate the outcome of this challenge to a conviction for illegal reentry under 8 U.S.C. § 1326.

In *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc), this Court interpreted the meaning of the phrase "at the time of application for admission" in the ground of inadmissibility at 8 U.S.C. § 1182(a)(7). It held that this phrase refers to "the moment of applying for entry at

---

[1] *See, e.g., Permanent Mission of India to United Nations v. City of New York,* 551 U.S. 193, 197 (2007); *Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006).

the border." *Id.* at 925. But an immigration officer found Mr. Gambino-Ruiz inadmissible under this ground even though he never applied for admission at the border. Based on this error, the officer deported Mr. Gambino-Ruiz through an expedited proceeding that stripped him of nearly all his procedural protections and opportunities for relief. Because Mr. Gambino-Ruiz's placement in this proceeding contradicted *Torres*, his underlying removal order was unlawful.

At sentencing, the district court also denied Mr. Gambino-Ruiz a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). In considering this adjustment, the court was supposed to apply a list of "appropriate considerations" that appear in the commentary of the Sentencing Guidelines. But the court applied almost none of these considerations, instead fixating on whether Mr. Gambino-Ruiz should have sought a bench trial or a conditional plea instead of a jury trial.

For these reasons, the Court should vacate Mr. Gambino-Ruiz's conviction. Alternatively, the Court should remand for the district court to apply the correct factors to the acceptance adjustment.

## STATEMENT OF JURISDICTION AND BAIL STATUS

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231 and entered final judgment on December 16, 2021. ER-58–63. On December 21, 2021, Mr. Gambino-Ruiz filed a notice of appeal, rendering it timely.[2] ER-131–32; Fed. R. App. P. 4(b)(1)(A)(i). Mr. Gambino-Ruiz is currently in the custody of the Bureau of Prisons at Herlong Federal Correctional Institution and is scheduled to be released on August 8, 2025.

## ISSUES PRESENTED FOR REVIEW

I.  **Whether Mr. Gambino-Ruiz's underlying removal order was invalid because he was not subject to expedited removal.**

II. **Whether the district court applied the correct factors to determine whether to grant Mr. Gambino-Ruiz an acceptance of responsibility adjustment.**

## STATUTORY AND GUIDELINES PROVISIONS

The statute permitting a person charged with illegal reentry to challenge their underlying order of removal states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in

---

[2] Although Mr. Gambino-Ruiz also filed a notice of appeal on the revocation of his supervised release in 20-CR-10144-LAB and Case No. 21-50305, he does not appeal that decision here.

subsection (a)(1) or subsection (b) unless the alien demonstrates that—

(1)     the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2)     the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3)     the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

The expedited removal statute states:

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i).

The statute defining § 1182(a)(7), one of the two categories of

people subject to expedited removal, states:

Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—

(I)     who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or

> document of identity and nationality if such document is
> required under the regulations issued by the Attorney
> General under section 1181(a) of this title . . .

is inadmissible.

8 U.S.C. § 1182(a)(7)(i).

The Sentencing Guideline governing acceptance of responsibility

states:

> If the defendant clearly demonstrates acceptance of responsibility
> for his offense, decrease the offense level by 2 levels.

U.S.S.G. § 3E1.1(a).

## STATEMENT OF THE FACTS

## I. Mr. Gambino-Ruiz crosses the border and is placed in expedited removal proceedings.

Mr. Gambino-Ruiz grew up in extreme poverty in Mexico. As a child, he would often go for days without food. ER-65. At the age of ten, he dropped out of school to help his father in the fields. ER-65. He first came to the U.S. when he was 24 years old. PSR 4.

Mr. Gambino-Ruiz has several convictions in the United States for immigration-related offenses, drugs, and car theft. PSR 5–7. Between 2013 and 2019, he was removed from the United States approximately four times. PSR 8.

5

The two removals that the government would later rely on to prosecute Mr. Gambino-Ruiz occurred through a process known as "expedited removal." ER-90, 97. In March 2013, Mr. Gambino-Ruiz was arrested after having "illegally entered" by crossing the border "east of Lukeville, Arizona Port of Entry." ER-90. He was served a notice advising him that he was inadmissible under § 1182(a)(7)(A)(i)(I) of the Immigration and Nationality Act as an immigrant "not in possession of a valid unexpired immigrant visa" or other entry document. ER-90. The same document ordered him removed, stating that he was "inadmissible as charged." ER-90. During an interview taken as part of this proceeding, Mr. Gambino-Ruiz stated that he had never "applied for any immigration documents to enter into the United States legally." ER-93. He also stated that he was never "inspected by immigration officers at a Port of Entry." ER-93.

Two months later, an immigration officer again placed Mr. Gambino-Ruiz in expedited removal. ER-95–100. During this proceeding, Mr. Gambino-Ruiz admitted that he entered the United States by "walking through the desert near Sonoyta, Mexico." ER-100. He was again served a notice advising him that he was inadmissible

6

under § 1182(a)(7)(A)(i)(I) as an immigrant "not in possession of a valid unexpired immigrant visa" or other entry document. ER-97. The same document again found him "inadmissible as charged" and ordered him removed. ER-97. He was then physically deported to Mexico. ER-95.

## II.  The government later relies on these expedited removal orders to prosecute Mr. Gambino-Ruiz for illegal reentry.

In September 2020, Mr. Gambino-Ruiz found out that his wife was pregnant with their second child. ER-65. He made the difficult decision to return to the United States to find work to support his growing family. ER-65. Not only was Mr. Gambino-Ruiz apprehended during this crossing, his wife ultimately miscarried. ER-23, 64.

When Border Patrol agents apprehended Mr. Gambino-Ruiz, he admitted frankly that he had "illegally entered the U.S." PSR 4. After his arrest, he again stated during an interrogation that he "illegally entered the U.S. by walking through the mountains." PSR 4. The government subsequently charged Mr. Gambino-Ruiz with illegal reentry under 8 U.S.C. § 1326. ER-129–30.

### III. Mr. Gambino-Ruiz challenges the validity of his expedited removal order.

Mr. Gambino-Ruiz waived indictment but filed a motion to dismiss the illegal reentry charge against him. ER-101–28. In this motion, Mr. Gambino-Ruiz challenged the validity of his two expedited removal orders under 8 U.S.C. § 1326(d).

Mr. Gambino-Ruiz explained that this Court's unanimous en banc decision in *Torres*, 976 F.3d 918, controlled the legal analysis. *Torres* interpreted the same ground of inadmissibility, 8 U.S.C. § 1182(a)(7), that immigration officers used to remove Mr. Gambino-Ruiz. This ground renders inadmissible a noncitizen who, "at the time of application for admission," is "not in possession of a valid unexpired immigrant visa" or other entry document. 8 U.S.C. § 1182(a)(7)(A)(i). Relying on the plain language of the statute, *Torres* held that this language applies *only* to individuals at the moment they submit an application for admission at a port of entry. ER-106–09.

But Mr. Gambino-Ruiz had never submitted an application for admission at a port of entry. ER-97. Thus, *Torres* precluded a finding that he was inadmissible under § 1182(a)(7). Mr. Gambino-Ruiz *was* inadmissible under a different ground of inadmissibility for being

"present in the United States without being admitted or paroled" or "arriv[ing] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). But Congress did not include this ground of inadmissibility in the expedited removal statute. ER-106 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). Rather, Congress only listed two grounds of inadmissibility in the expedited removal statute: § 1182(a)(7) and a ground related to fraud or misrepresentation. And Mr. Gambino-Ruiz was not inadmissible under either of these grounds. ER-107–09.

Because Mr. Gambino-Ruiz was not inadmissible under either of these grounds, he was not removable as charged. ER-108. Furthermore, expedited removal stripped him of nearly all the substantive rights and procedural protections afforded in normal removal proceedings. ER-108–09. Because his placement in expedited removal violated due process and met the other requirements to challenge a prior removal order under § 1326(d), Mr. Gambino-Ruiz argued that the district court should dismiss the information. ER-109–11.

The government filed a response opposing this motion. ER-74–100. The government relied almost entirely on a Supreme Court opinion

issued three months before *Torres*. ER-76–84 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020)). This opinion involved a petition for habeas corpus filed by an asylum seeker apprehended 30 yards inside the United States. Because this asylum seeker had been found inadmissible under § 1182(a)(7), the government argued that Mr. Gambino-Ruiz must be inadmissible under the same ground. ER-77–78. The government pointed to nothing in *Thuraissigiam* raising or addressing the specific statutory interpretation question of § 1182(a)(7) that *Torres* confronted and resolved. ER-76–84.

## IV.   The district court denies Mr. Gambino-Ruiz's challenge to his expedited removal.

At a motion hearing, the district court denied Mr. Gambino-Ruiz's motion to dismiss. ER-12–12. Like the government, the district court relied on *Thuraissigiam*, believing that it "forecloses the argument that the expedited removal that the government alleges was invalid." ER-5. The court asserted that "the ability of the government to expeditiously remove someone is not limited to the ports of entry, that it applies across the border for those caught attempting to come in illegally or coming in illegally." ER-11. The case then proceeded to trial.

**V.    At trial, Mr. Gambino-Ruiz does not call any witnesses or present an affirmative case.**

In a one-day trial, the government called six witnesses and submitted 18 exhibits. ER-71–73. Mr. Gambino-Ruiz called no witnesses and submitted no exhibits. ER-71–73. At the conclusion of trial, the jury found Mr. Gambino-Ruiz guilty of the single count of illegal reentry. ER-70.

**VI.   At sentencing, the district court declines to grant a downward adjustment for acceptance of responsibility.**

In a sentencing memorandum, Mr. Gambino-Ruiz requested a sentence of 18 months. ER-66. He pointed out the difficult circumstances of his childhood poverty, his wife's miscarriage, and the challenges of being incarcerated during the COVID epidemic. ER-66.

At sentencing, Mr. Gambino-Ruiz also argued that the court should grant him a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). ER-25. To determine whether to grant this adjustment, the Guidelines commentary to § 3E1.1 includes a non-exhaustive list of eight "appropriate considerations" courts should weigh. U.S.S.G. § 3E1.1 n.1. The commentary also states that a person who goes to trial may receive acceptance in "rare

11

situations," such as when the individual "seeks to assert and preserve" certain legal issues. U.S.S.G. § 3E1.1 n.2. Examples of this could include "a constitutional challenge to a statute or a challenge of the applicability of the statute to his conduct." *Id.* But such a determination will be based "primarily upon pre-trial statements and conduct," rather than post-trial statements and conduct. *Id.*

Mr. Gambino-Ruiz argued that he merited an acceptance adjustment under these factors. ER-26–27. He pointed out that he went to trial to "preserve his 1326(d) motion." ER-26. The trial only took one day, and he did not "contest any specific element" or testify on his own behalf. ER-26, 27. Prior to trial, Mr. Gambino-Ruiz had also "stipulated to his fingerprints," which "saves Government resources." ER-27. And when he was initially apprehended, he "admitted to the elements of the offense." ER-27.

The district court nevertheless declined to grant an acceptance adjustment. ER-42. The court repeatedly faulted Mr. Gambino-Ruiz for not seeking a conditional plea or a bench trial, though neither of these are listed as "appropriate considerations" under § 3E1.1 n.1. ER-26–27, 28, 37–38, 39. The court also questioned why Mr. Gambino-Ruiz had not

12

made a post-trial statement to the Probation Officer, even though defense counsel explained that this was in due in part to her own scheduling issues. ER-25, 28. The court also noted that Mr. Gambino-Ruiz had filed a motion to suppress his statements and contested a special allegation that would subject him to a higher statutory maximum based on his criminal history. ER-38. The court wondered why Mr. Gambino-Ruiz had not shown more post-trial remorse, remarking that "a jury's found him guilty, but where's the acceptance of responsibility and contrition? Where is that? I haven't seen that." ER-25–26.

After denying the acceptance adjustment, the district court calculated the Guidelines range as 63 to 78 months and imposed a sentence of 63 months. ER-18, 49. Defense counsel renewed her objection, arguing that "given the specific circumstances of Mr. Gambino's trial, he should have received acceptance." ER-54. This appeal follows.

## SUMMARY OF THE ARGUMENT

The unanimous en banc decision in *Torres* controls the outcome of this case. *Torres* held that the ground of inadmissibility at § 1182(a)(7)

only applies at the moment a noncitizen submits an application for admission at a port of entry. Mr. Gambino-Ruiz never submitted an application for admission at a port of entry. Thus, he was not inadmissible under § 1182(a)(7). And because he was not inadmissible under § 1182(a)(7), he could not be placed in expedited removal proceedings. This defect satisfied all the requirements of § 1326(d) and also prevented the government from proving a key element of the offense. Thus, the Court should vacate Mr. Gambino-Ruiz's conviction and remand with instructions to dismiss the information.

Even if Mr. Gambino-Ruiz's conviction could stand, the district court did not apply the correct factors to determine whether to grant him an adjustment for acceptance of responsibility. Rather than considering the factors in the Guidelines commentary and Mr. Gambino-Ruiz's pre-trial statements, the district court fixated on his failure to seek a conditional plea or a bench trial and his post-trial statements. Thus, the Court should at least remand with instructions for the district court to apply the correct factors to its acceptance-of-responsibility determination.

14

# ARGUMENT

## I. Mr. Gambino-Ruiz's underlying removal order was invalid.

### A. Standard of review

This Court reviews de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *United States v. Pallares-Galan*, 359 F.3d 1088, 1094 (9th Cir. 2004); *United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir. 2001).

### B. The government had no statutory authority to deport Mr. Gambino-Ruiz in an expedited removal.

In 2013, an immigration officer twice placed Mr. Gambino-Ruiz in expedited removal proceedings and issued an order of deportation. Those orders were unlawful. Under *Torres*, only people who apply for admission at a port of entry or use fraudulent documents are subject to expedited removal. Mr. Gambino-Ruiz did neither.

#### 1. *Torres* held that expedited removal only applies to people seeking admission at a port of entry.

This Court's unanimous en banc decision in *Torres* interpreted the ground of inadmissibility at § 1182(a)(7)(i). This subsection was the *sole* charge of inadmissibility against Mr. Gambino-Ruiz in both his removals. Thus, *Torres*' interpretation of § 1182(a)(7)(i) controls the legal analysis here.

15

*Torres* involved a Filipina citizen who had entered the Northern Mariana Islands as a guest worker in 1997. *See* 976 F.3d at 923. She was still residing there when the Immigration and Nationality Act (INA) took effect in 2009. *See id*. at 922, 923. Soon after the INA took effect, the government charged Ms. Torres with being inadmissible under § 1182(a)(7)(A)(i). *See id.* This subsection renders inadmissible any noncitizen who, "at the time of application for admission," is "not in possession of a valid unexpired immigrant visa" or other entry document. 8 U.S.C. § 1182(a)(7)(A)(i).

Ms. Torres argued that this ground of inadmissibility did not apply to her. She explained that after the INA took effect, she had "never submitted an application for admission into the United States" because she was already residing in the Northern Mariana Islands. *Id*. at 923. Thus, she did not fall within the plain language of § 1182(a)(7), which only applies to someone not in possession of a valid visa "at the time of application for admission." *Id*. The government disagreed, arguing that an application for admission "*continues*, potentially for years or decades, until the immigrant appears before the IJ in removal proceedings." *Id*. at 926 (emphasis in original).

16

In a unanimous decision, the en banc Court agreed with Ms. Torres. The Court started with the plain meaning of the phrase "application for admission." *Id.* at 924. Relying on definitions elsewhere in the INA, it concluded that this phrase refers to an "application to lawfully come from outside into the United States after inspection and authorization by an immigration officer." *Id.* The Court then addressed the "core question in this case"—specifically, "at what moment does 'the time of application for admission' occur?" *Id.*

*Torres* held that for purposes of § 1182(a)(7), an application for admission occurs when a noncitizen "seeks permission to physically enter United States territory" from either "outside the country or inside the country *at a port of entry*." *Id.* (emphasis added). The Court deducted this from the statute's exclusive reference to visas and other entry documents that "expressly tether[ ] the statute to the moment of entering into the United States from another country." *Id.* at 925. Other examples from the INA also "reinforce[ ] our understanding that this phrase refers to *the moment of applying for entry at the border*." *Id.* (emphasis added). *See also id.* at 925–26 (stating that "[s]tatutory construction" also "confirms our

17

conclusion that 'application for admission' should be read as referring to the moment an immigrant applies to physically enter the country").

*Torres* rejected the government's theory that an application for admission could continue "potentially for years or decades," holding that this would "push the statutory test beyond its breaking point." *Id*. at 926. Relying on other examples of temporal language from the INA, the Court concluded that "Congress understands the phrase 'at the time' to refer to a single point in time, and when it wants a statute's reach to endure over a continuous subsequent period, it says so." *Id*. This reading of the statute also aligned with decisions from the Eleventh and Fifth Circuits holding the same. *See id*. at 926–27 (citing *Ortiz-Bouchet v. U.S. Attorney General*, 714 F.3d 1353, 1355 (11th Cir. 2013) (per curiam), and *Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016)). So *Torres* made clear that the ground of inadmissibility at § 1182(a)(7)(A)(i) *only* applies to noncitizens at the moment they are "applying for entry at the border." *Id*. at 925.

### 2. Under *Torres*, expedited removal *cannot* apply to people inside the U.S. who unlawfully entered.

*Torres* carries important implications for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i), which the government used to deport Mr. Gambino-Ruiz. To understand these implications, the Court must

compare three similar but distinct grounds of inadmissibility—only two of which appear in the expedited removal statute.

For purposes of this case, the INA contains three relevant grounds of inadmissibility. One refers to noncitizens who are "present in the United States" without being admitted or "arrive at any time and place other than as designated"—i.e., undocumented people who entered unlawfully. 8 U.S.C. § 1182(a)(6)(A)(i). The second refers to noncitizens who attempt to enter the U.S. "by fraud or willfully misrepresenting a material fact"—i.e., those who present a fake green card or lie about their nationality to enter the country. 8 U.S.C. § 1182(a)(6)(C)(i). The third is the subsection at issue in *Torres*, which refers to a person who "at the time of application for admission" is "not in possession of a valid unexpired immigrant visa" or other valid entry document. 8 U.S.C. § 1182(a)(7)(i)(I). The following chart provides a comparison of the relevant language in these subsections:

| | **Three inadmissibility grounds:** |
|---|---|
| § 1182(a)(6)(A)(i) | "**present in the United States without being admitted or paroled**" or "**arrives in the United States at any time or place other than as designated** by the Attorney General" |
| § 1182(a)(6)(C)(i) | "by **fraud or willfully misrepresenting a material fact**, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" |
| § 1182(a)(7)(i)(I) | "**at the time of application for admission**" is "**not in possession of a valid unexpired immigrant visa,** reentry permit, border crossing identification card, or other valid entry document required by this chapter" |

Expedited removal is a type of deportation that permits an immigration officer to summarily issue an order of removal "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). But Congress slated *only two* of the three inadmissibility categories listed above for expedited removal:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section **1182(a)(6)(C) or 1182(a)(7)** of this title, the officer shall order the alien removed from the United States without further hearing or review[.]

20

8 U.S.C. § 1225(b)(1)(A)(i) (emphases added). In other words, the
government may place in expedited removal people who 1) use fraud or
misrepresentation under § 1182(a)(6)(C)(i) or 2) do not have a valid entry
document "at the time of application for admission" under § 1182(a)(7).
But Congress did *not* include in the expedited removal statute the third
ground of inadmissibility—i.e., those who are present without admission
or who entered at an undesignated time or place:

| | **Subject to Expedited Removal?** |
|---|---|
| § 1182(a)(6)(A)(i)<br><br>**NO** | "**present in the United States without being admitted or paroled**" or "arrives in the United States at any time or place other than as designated by the Attorney General" |
| § 1182(a)(6)(C)(i)<br><br>**YES** | "by **fraud or willfully misrepresenting a material fact**, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" |
| § 1182(a)(7)(i)(I)<br><br>**YES** | "at the time of application for admission" is "**not in possession of a valid unexpired immigrant visa,** reentry permit, border crossing identification card, or other valid entry document required by this chapter" |

Although Congress did not include unlawful entrants under § 1182(a)(6)(A)(i) in the expedited removal statute, the Department of Homeland Security has interpreted the statute to encompass them. In 2004, it issued a regulation applying expedited removal to *all* noncitizens who are "encountered by an immigration officer within 100 air miles of the U.S. international land border" and have "not established to the satisfaction of an immigration officer" that they have been physically present in the United States for 14 days. Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48880 (2004). The government did so under the theory that a person who had crossed the border between ports of entry was inadmissible for not having a valid entry document "at the time of application for admission" under § 1182(a)(7).

*Torres* now forecloses that theory. *Torres* held that § 1182(a)(7)(A)(i) *only* describes noncitizens who are "applying for entry at the border." *Torres*, 976 F.3d at 925. But people like Mr. Gambino-Ruiz were arrested *inside* the United States and did not "apply for entry at the border." So while Mr. Gambino-Ruiz may be inadmissible under § 1182(a)(6)(A)(i) for being unlawfully present, that subsection is not listed in the expedited

22

removal statute. And he does not fall within either of the subsections that *are* subject to expedited removal.

| | Mr. Gambino-Ruiz's inadmissibility |
|---|---|
| § 1182(a)(6)(A)(i)<br><br>YES | "**present in the United States without being admitted or paroled**" or "arrives in the United States at any time or place other than as designated by the Attorney General" |
| § 1182(a)(6)(C)(i)<br><br>NO | "by **fraud or willfully misrepresenting a material fact,** seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" |
| § 1182(a)(7)(i)(I)<br><br>NO | "at the time of application for admission" is "**not in possession of a valid unexpired immigrant visa,** reentry permit, border crossing identification card, or other valid entry document required by this chapter" |

Thus, the government lacked the statutory authority to deport Mr. Gambino-Ruiz through expedited removal.

As *Torres* explained, Congress intended expedited removal to work this way. The legislative history shows that Congress believed "§ 1182(a)(6) would apply where noncitizens had already 'made an entry

without inspection,'" while "§ 1182(a)(7) would apply where the '*examining* immigration officer determines that an *arriving* alien' lacks valid documents." *Torres*, 976 F.3d at 929 n.12 (quoting H.R. Rep. No. 104-828, at 208, 209 (1996) (Conf. Rep.) (emphases in *Torres*)). *Torres* noted that "a contrary reading would render other provisions of the immigration code superfluous." *Id.* at 930. After all, if "anyone present without a valid admission document is also in violation of § 1182(a)(7)," it would "render[ ] § 1182(a)(6) wholly redundant as a ground of inadmissibility." *Id.* (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174–79 (2012), and its discussion of the rule against surplusage).

Furthermore, the legislative history confirms that Congress only applied the expedited removal statute to "arriving aliens." *See* H.R. Rep. No. 104-828, at 209 (1996) (Conf. Rep.) ("Expedited Removal of Arriving Aliens"). The term "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States *at a port-of-entry*, or an alien seeking transit through the United States *at a port-of-entry*[.]" 8 C.F.R. § 1001.1(q) (emphases added). It also includes a person interdicted at sea and brought to the U.S. "whether or not to a

24

designated port-of-entry." *Id.* So apart from those "interdicted at sea," Congress intended expedited removal to apply only to applications for admission at ports of entry.[3]

Other textual clues confirm that Congress intended expedited removal to apply at ports of entry. The inadmissibility ground at § 1182(a)(6)(A)(i), which *does* apply to Mr. Gambino-Ruiz, refers to a person who arrives "at any time or place other than as designated by the Attorney General." This language is nearly identical to the crime of illegal entry, which prohibits entry "at any time or place other than as designated by immigration officer." 8 U.S.C. § 1325(a)(1). Such language refers exclusively to people who "enter or attempt to enter *outside of an open port of entry*," not those who elude inspection *at* a port of entry. *United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019) (emphasis added). So Congress knew how to draft language referring to people who enter unlawfully, yet it chose not to include such language in

---

[3] *Torres* clarified that expedited removal could also apply to a person inside the U.S. who had entered "by fraud or willfully misrepresenting a material fact" under § 1182(a)(6)(C). *See* 976 F.3d at 929 n.13 (stating that "§ 1182(a)(7), *as opposed to* § 1182(a)(6)(C), may apply only to noncitizens who are 'arriving in the United States'") (emphasis added). But the government has never claimed that Mr. Gambino-Ruiz entered through fraud or misrepresentation.

the expedited removal statute. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Instead, it cross-referenced two other grounds of inadmissibility, neither of which apply to Mr. Gambino-Ruiz.

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quotations and alterations omitted). If Congress wanted to place people inside the United States in expedited removal, it had a very simple way to do so: list § 1182(a)(6)(A) as a third ground of inadmissibility in the expedited removal statute. But Congress did not. So under the bedrock rules of statutory construction, courts may not rewrite the statute to apply expedited removal to a category of noncitizens that Congress deliberately omitted.

At least one district court has applied *Torres* to reach this same conclusion. *See United States v. Mayren,* __ F. Supp. 3d __, No. CR 20-054-DSF, 2022 WL 4480568 (C.D. Cal. Mar. 16, 2022). In *Mayren*, an immigration officer issued an expedited removal order under § 1182(a)(7) to a person who had crossed the border three miles east of

Naco, Arizona. *See id.* at *1. When the defendant later returned and faced a § 1326 charge, he moved to dismiss the indictment for the reasons explained here. *See id.* at *3.

The district court granted the motion to dismiss. *See id.* at *1. It held that it is "clear based on *Torres*" that § 1182(a)(7) only "pertains to noncitizens 'applying for entry at the border.'" *Id.* at *4 (quoting *Torres*, 976 F.3d at 925). The court rejected the government's argument that *Torres* is limited to the narrow circumstances relating to the Northern Mariana Islands, explaining that no precedent had ever applied § 1182(a)(7) to "'noncitizens who are physically but unlawfully present in the United States.'" *Id.* at *5 (quoting *Torres*, 976 F.3d at 929 n.13). The court thus found that the defendant had satisfied all the requirements of § 1326(d) and dismissed the indictment. *See id.* at *7. Though the government filed a motion to reconsider, the court dismissed that, too. *See United States v. Mayren*, No. CR 20-00054-DSF, 2022 WL 4480567, at *1 (C.D. Cal. Aug. 1, 2022).

Mr. Gambino-Ruiz's case presents a materially identical set of facts. The government's own documents state that in March and May of 2013, Mr. Gambino-Ruiz "illegally entered" the United States by

crossing the border "east of Lukeville, Arizona Port of Entry" and "walking through the desert near Sonoyta, Mexico." ER-90, 100. He was placed in expedited removal proceedings, charged with inadmissibility under § 1182(a)(7) and subsequently removed. ER-88–100. But because Mr. Gambino-Ruiz was not "applying for admission at the border," *Torres* dictates that he was not inadmissible under § 1182(a)(7). Thus, he was not subject to expedited removal.

### 3. The district court's conclusions to the contrary were wrong.

Below, the district court disagreed with Mr. Gambino-Ruiz and held that he was subject to expedited removal. ER-11. To do so, the court relied on *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020), a Supreme Court decision involving a petition for habeas corpus. ER-5, 11. The court agreed with the government's argument that *Thuraissigiam* "resolves the issue you raised as to whether the person has to be caught trying to enter at the port of entry[.]" ER-5. But the en banc *Torres* panel already considered and rejected this argument—twice.

In *Thuraissigiam*, the Supreme Court upheld limits on the use of a habeas corpus proceeding to challenge an asylum officer's

determination that a person lacked a "credible fear" of persecution. *See id.* at 1983. Like Mr. Gambino-Ruiz, the petitioner in *Thuraissigiam* entered unlawfully and was apprehended near the border. *See id.* at 1967. An immigration officer found him inadmissible under § 1182(a)(7) and issued an expedited removal order. *Id.* at 1964, 1967. Because an immigration officer in *Thuraissigiam* applied § 1182(a)(7) to a person inside the United States who entered unlawfully, the government and the district court maintained that *Thuraissigiam* specifically considered and resolved the question presented in *Torres*: whether § 1182(a)(7)'s "at the time of application for admission" language applies only at ports of entry. ER-5, 11.

But *Torres* expressly stated that "*no case* has held that [the expedited removal statute] allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States." *Torres*, 976 F.3d at 929 n.13 (emphasis added). And *Torres* came out three months after *Thuraissigiam*. *See Thuraissigiam*, 140 S. Ct. at 1959 (issued on June 25, 2020); *Torres*, 976 F.3d at 918 (issued on September 24, 2020). Indeed, *Torres* cited *Thuraissigiam* for other purposes and was thus well aware of it. *See id.*

29

at 924 n.10. So when *Torres* said that "no case" had expressly held that § 1182(a)(7) applies to noncitizens physically but unlawfully present in the United States, this statement necessarily included *Thuraissigiam*.

*Torres* had good reason to hold that *Thuraissigiam* did not resolve the scope of § 1182(a)(7). Neither party in *Thuraissigiam* raised or addressed the question of whether the phrase "time of application for admission" in § 1182(a)(7) could apply to a noncitizen physically but unlawfully present in the United States. *See generally Thuraissigiam*, 140 S. Ct. at 1963–83; Briefs of Petitioner and Respondent, Department of Homeland Security v. Thuraissigiam, Case No. 19-161 (2020). Mr. Thuraissigiam did not even cite § 1182(a)(7) in his brief. *See* Brief of Respondent, *Department of Homeland Security v. Thuraissigiam*, Case No. 19-161, 2020 WL 353476 (2020). Rather, the parties and the Supreme Court assumed without deciding that Mr. Thuraissigiam was inadmissible under § 1182(a)(7). This is a classic example of a question that "merely lurk[ed] in the record, neither brought to the attention of the court nor ruled upon." *Webster v. Fall*, 266 U.S. 507, 511 (1925). Because *Thuraissigiam* never considered whether § 1182(a)(7)'s "time of application for admission" language could apply to physically but

unlawfully present noncitizens, it may not be "considered as having been so decided as to constitute precedent[ ]." *Id.*

If any doubt remained, the en banc *Torres* panel rejected this theory a second time—*after* the government brought *Thuraissigiam* to its attention. After *Torres* issued, the government asked the en banc panel to amend the opinion by deleting the language from footnote 13 stating that "no case has held that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States." Dkt. 112 at 1–5. The government argued that this language conflicted with *Thuraissigiam*, making arguments virtually identical to those it made in Mr. Gambino-Ruiz's case below. *See id.* at 3–5. But *Torres* rejected these arguments, denying the government's motion in full and preserving its opinion as written. *See* Dkt. 113. So *Torres* twice rejected the district court's theory that *Thuraissigiam* controls the question presented here.

It is true that *Torres* concluded footnote 13 by stating that "we need not resolve the full scope" of the expedited removal statute. 976 F.3d at 929 n.13. But this simply means that the Court must do so now by plugging *Torres*' binding interpretation of § 1182(a)(7) into the

expedited removal statute. Once the Court does so, the outcome is inevitable: people who did not apply for admission at a port of entry do not fall within § 1182(a)(7) and thus are not subject to expedited removal. It is simply not possible to read the language of § 1182(a)(7) as applying one way to Ms. Torres and another way to Mr. Gambino-Ruiz.

Finally, the district court questioned as a matter of policy why it would "make sense" to "apply [expedited removal] at the port of entry and not at other places?" ER-7–8. To begin, courts may not second guess Congress' policy choices when the "plain meaning of the statute" makes these choices clear. *Torres*, 976 F.3d at 924. *See also Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1940 (2021) (declining to rewrite the statute and "impermissibly second-guess Congress' decision").

But even if this Court *could* rewrite the plain language of the statute, the policy choice to only apply § 1182(a)(7) to ports of entry is not illogical. Congress created other ways by which individuals unlawfully present in the United States may be quickly removed without seeing an immigration judge. *See, e.g.*, 8 U.S.C. § 1231(a)(5) (reinstatement of removal); 8 U.S.C. § 1228(b) (administrative removal); 8 U.S.C. § 1229a(d) (stipulated removal). Given these options, it is not

unreasonable to think that Congress reserved the most expeditious type of removal for those at ports of entry. *See Torres*, 976 F.3d at 929 n.12 (noting the legislative history that "§ 1182(a)(7) would apply where the '*examining* immigration officer determines that an *arriving* alien' lacks valid documents") (quoting H.R. Rep. No. 104-828, at 208, 209 (1996) (Conf. Rep.) (emphases in *Torres*)). Indeed, a decade earlier, the Supreme Court had explained that some individuals in exclusion proceedings at a "port of entry" lack the same due process rights as people "already physically in the United States." *Landon v. Plasencia*, 459 U.S. 21, 26–27, 33–35 (1982). Given this holding, Congress may not have wanted to subject expedited removal to legal challenges from people within the United States who stand on stronger constitutional footing.

But whatever Congress' reasons, the plain language of the statute controls. Because Mr. Gambino-Ruiz did not apply for admission at a port of entry, *Torres* mandates that he was not inadmissible under § 1182(a)(7). The mere fact that the government *has* read this ground of inadmissibility differently in the past does not control its meaning. If it did, the executive branch—rather than the judicial branch—would have

33

the power to interpret the laws of this country, violating any notion of separation of powers. Accordingly, this Court must apply *Torres* to hold that Mr. Gambino-Ruiz was not subject to expedited removal.

### C. Mr. Gambino-Ruiz's unlawful removal satisfies the requirements of § 1326(d).

A defendant charged with illegal reentry under § 1326 has a due process right to challenge the removal order upon which the charge is predicated. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). Following *Mendoza-Lopez*, Congress codified the procedure for such a challenge, requiring that defendants: 1) exhaust their administrative remedies; 2) show that the removal proceedings improperly deprived them of judicial review; and 3) demonstrate that the removal order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). With respect to the third requirement, a removal order is "fundamentally unfair" if 1) a defendant's due process rights were violated by defects in the underlying proceeding, and 2) they suffered prejudice as a result. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (alterations omitted).

Here, the district court only reached the first half of the third prong, holding that Mr. Gambino-Ruiz's placement in expedited

34

removal proceedings "did not violate due process." ER-11. For the reasons above, this conclusion was incorrect. Furthermore, Mr. Gambino-Ruiz's removal satisfies the remaining requirements of § 1326(d).

## 1. Mr. Gambino-Ruiz had no right to administrative remedies or judicial review.

Below, the government did not contest that Mr. Gambino-Ruiz satisfied the first two prongs of § 1326(d)(1) and (2). Indeed, it all but admitted it, stating that "[a]s to the first and second requirements, expedited removals of inadmissible arriving noncitizens do not provide for administrative review[.]" ER-75–76 (citing *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011)). This was correct, as *Barajas-Alvarado* held that individuals in expedited removal satisfy § 1326(d)(1) and (2) because they are "not entitled to administrative review" and have "no opportunity for judicial review." 655 F.3d at 1087. *See also United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) (same); 8 U.S.C. § 1252(e)(5); 8 U.S.C. § 1225(b)(1)(C).

Nothing in the Supreme Court's recent decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), disturbs *Barajas-Alvarado*. In *Palomar-Santiago*, the Supreme Court considered the narrow

question of whether a person *appearing before an IJ* who was not removable as charged was "excused" from meeting the exhaustion and judicial review requirements in § 1326(d)(1) and (2). *Id.* at 1619. Unlike the defendant in *Palomar-Santiago*, Mr. Gambino-Ruiz had no administrative or judicial remedies to challenge his expedited removal. *See* 8 U.S.C. § 1252(e)(5); 8 U.S.C. § 1225(b)(1)(C). Indeed, six months after *Palomar-Santiago*, this Court continued to apply *Barajas-Alvarado* to expedited removal orders. *See United States v. De La Mora-Cobian*, 18 F.4th 1141, 1146 (9th Cir. 2021). Thus, Mr. Gambino-Ruiz's claim satisfies the first two prongs of § 1326(d)(1) and (2).[4]

### 2. Mr. Gambino-Ruiz's removal order was fundamentally unfair.

As noted, a removal order is "fundamentally unfair" under the third prong of § 1326(d) if 1) a defendant's due process rights were violated by defects in the underlying proceeding, and 2) they suffered prejudice as a result. *Ubaldo-Figueroa*, 364 F.3d at 1048. Here, the

---

[4] Even if Mr. Gambino-Ruiz somehow *did* have a right to challenge the expedited removal, he was never advised of it and thus did not knowingly and intelligently waive it. *See United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (stating in the context of § 1326(d) that a valid waiver of the right to appeal "must be both considered and intelligent") (quotations omitted).

district court denied Mr. Gambino-Ruiz's motion to dismiss solely under the first half of this definition—finding that his placement in expedited removal proceedings "d[id] not violate due process" because he was inadmissible under § 1182(a)(7). ER-11.

As explained above, *Torres* forecloses this conclusion. This Court cannot limit § 1182(a)(7) to applicants for admission at a port of entry in *Torres* and yet read it more broadly here. Rather, the Court must apply *Torres*' interpretation of § 1182(a)(7) consistently across the board. This means that Mr. Gambino-Ruiz was not inadmissible under § 1182(a)(7) and not subject to expedited removal. Thus, as the district court in *Mayren* held, "under *Torres*, [the defendant's] due process rights were violated when he was placed in expedited removal proceedings because he was not inadmissible under § 1182(a)(7)." No. CR 20-054-DSF, 2022 WL 4480568, at *6.

Furthermore, this Court has held that the government's failure to "comply with [its] own regulations" violates due process when those regulations "serve a purpose of benefit to the alien." *Ramos*, 623 F.3d at 683 (quotations and alterations omitted). Here, the government's error failed to comply with the plain language of a *statute* that excluded

37

Mr. Gambino-Ruiz from expedited removal. *See* 8 U.S.C.

§ 1225(b)(1)(A)(1) (limiting expedited removal to those who are

"inadmissible under section 1182(a)(6)(C) or 1182(a)(7)"). This statute

"serves a purpose of benefit" to Mr. Gambino-Ruiz because it would

have afforded him access to a full hearing, administrative remedies,

relief from removal, and judicial review. *See* 8 U.S.C. § 1229a(b)(1)–(4)

(granting noncitizens the right to appear before an immigration judge,

present witnesses, retain counsel, examine evidence, and seek relief

from removal). But because the government erroneously placed

Mr. Gambino-Ruiz in expedited removal proceedings, he had access to

none of these statutory rights, and his removal violated due process.

This error also caused Mr. Gambino-Ruiz prejudice. As the district

court held in *Mayren*, "a defendant is prejudiced where he was 'removed

when he should not have been.'" 2022 WL 4480568, at *6 (quoting

*United States v. Aguilera-Rios*, 769 F.3d 626, 630, 636 (9th Cir. 2014).

"This is true even when the defendant would have otherwise been

removable." *Id.* (citing *United States v. Ochoa-Oregel*, 904 F.3d 682,

685–86 (9th Cir. 2018)). So "'even if the government might have been

able to remove the defendant on other grounds through a formal

removal proceeding, his removal on illegitimate grounds is enough to show prejudice.'" *Id.* (quoting *Ochoa-Oregel,* 904 F.3d at 685–86) (alterations omitted). Thus, "when a defendant is removed when he should not have been, his removal was fundamentally unfair." *Id. See also United States v. Valdivia-Flores,* 876 F.3d 1201, 1210 (9th Cir. 2017) (because an improper charge in administrative removal proceedings "cannot support the asserted basis" for removal, the noncitizen "was therefore prejudiced" and his removal fundamentally unfair).[5]

## D. Alternatively, the prior removal order is a legal nullity that cannot sustain a § 1326 conviction.

Even outside of the § 1326(d) framework, Mr. Gambino-Ruiz's erroneous placement in expedited removal prevents the government from using that removal to convict him. The Immigration and

---

[5] Although a showing that he was not inadmissible under § 1182(a)(7) is sufficient to demonstrate prejudice, Mr. Gambino-Ruiz can also show that he would have had a plausible claim to voluntary departure if placed before an immigration judge. *See United States v. Valdez-Novoa*, 780 F.3d 906, 914–21 (9th Cir. 2015) (discussing the requirements for a plausibility showing on voluntary departure under § 1326(d)(3)). If the Court determines that such an analysis is required, it should remand for a full consideration of Mr. Gambino-Ruiz's equities, since the district court did not consider the issue of prejudice below. ER-5–11.

Nationality Act provides that "[a]n *immigration judge* shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1) (emphasis added). Apart from statutorily-created exceptions such as expedited removal, proceedings before an immigration judge are the "sole and exclusive procedure" for determining inadmissibility. 8 U.S.C. § 1229a(a)(3).

Where an adjudicator lacks jurisdiction over a defendant, that adjudicator "has no power to render any judgment against the defendant's person or property." *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007). Thus, any subsequently issued judgment is "void" as a matter of law. *See id*; *see also Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013) (explaining the "traditional rule" that "a judgment rendered in excess of the court's jurisdiction is void and a legal nullity"). So when a noncitizen is erroneously placed in expedited removal, an immigration officer's "lack of authority" to issue a removal order in that context "renders that component of [the noncitizen's] proceedings in essence, a legal nullity." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003).

Here, the immigration officer had no statutory authority to issue an expedited removal order against Mr. Gambino-Ruiz. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Thus, no order existed as a matter of law. Accordingly, the government could not prove a key element of illegal re-entry: that Mr. Gambino-Ruiz was previously "denied admission, excluded, deported, or removed." 8 U.S.C. § 1326(a)(1). So even if Mr. Gambino-Ruiz's challenge somehow fails to satisfy the three prongs of § 1326(d), the "legal nullity" of his removal order means that the government did not prove all the elements of § 1326. *Noriega-Lopez*, 335 F.3d at 884. The Court may dismiss the indictment on that basis alone.

\* \* \*

The unanimous en banc holding in *Torres* requires this Court to apply § 1182(a)(7) *only* to noncitizens who submit an application for admission at a port of entry. Mr. Gambino-Ruiz did not do so. Thus, he was not subject to expedited removal. Because this was fatal to his illegal reentry charge, the Court must vacate his conviction.

**II.    The district court's use of the wrong legal standard to deny Mr. Gambino-Ruiz acceptance of responsibility requires remand.**

**A.    Standard of review**

When analyzing a decision under U.S.S.G. § 3E1.1, this Court reviews de novo "whether the district court misapprehended the law with respect to the acceptance of responsibility reduction." *United States v. Green*, 940 F.3d 1038, 1041 (9th Cir. 2019). It reviews any factual finding embedded in an acceptance of responsibility determination for clear error. *Id. See also United States v. Tuan Ngoc Luong*, 965 F.3d 973, 990 (9th Cir. 2020) (same).

**B.    The district court did not apply the correct factors to determine whether to grant Mr. Gambino-Ruiz acceptance of responsibility.**

When considering whether to grant Mr. Gambino-Ruiz a two-level downward adjustment at sentencing, the district court considered almost none of the relevant considerations listed in the Guidelines commentary. Instead, it fixated on Mr. Gambino-Ruiz's post-trial statements and the fact that he did not request a conditional plea or a bench trial. By relying on the wrong factors, the court "erred as a matter of law." *Tuan Ngoc Luong,* 965 F.3d at 992.

42

Section 3E1.1 of the Sentencing Guidelines states that if a defendant "clearly demonstrates acceptance of responsibility for his offense," the Court may "decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). To determine whether to grant an acceptance-of-responsibility adjustment, Note 1 of the commentary includes a non-exhaustive list of "appropriate considerations":

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . .;

(B) voluntary termination or withdrawal from criminal conduct or associations;

(C) voluntary payment of restitution prior to adjudication of guilt;

(D) voluntary surrender to authorities promptly after commission of the offense;

(E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F) voluntary resignation from the office or position held during the commission of the offense;

(G) post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment); and

(H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1 n.1.

The commentary adds that this adjustment is not intended to apply to a person who "puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. § 3E1.1 n.2. Such instances will be "rare." *Id*. But going to trial does not "automatically preclude" a defendant from receiving acceptance of responsibility. *Id*. For instance, if a person "goes to trial to assert and preserve issues that do not relate to factual guilt," such as a "constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct," they may still receive the adjustment. *Id*. Indeed, "were a defendant *required* to plead guilty to be entitled to the reduction, the sentencing guidelines would penalize the exercise of the constitutional right to go to trial." *United States v. McKinney*, 15 F.3d 849, 852 (9th Cir. 1994) (emphasis in original). But when a defendant goes to trial, the sentencing court must base its determination "primarily upon *pre-trial* statements and conduct" from the defendant. U.S.S.G. § 3E1.1 n.2. (emphasis added).

Here, the district court did not rely "primarily upon [Mr. Gambino-Ruiz's] *pre-trial* statements and conduct." *Id*. Rather, it relied primarily on Mr. Gambino-Ruiz's *post-trial* statements and

conduct, as well as considerations listed nowhere in the § 3E1.1

commentary. Specifically, the district court relied on the fact that

Mr. Gambino-Ruiz:

- Had "an opportunity to talk to a Probation Officer" but "decided not to make a statement" (even though defense counsel explained that this was due in part to her own "scheduling issues," ER-25, 28;

- Did not "pursue a conditional plea" or other "options," ER-26, 28, 37–38, 39;

- Did not waive his right to a jury trial in lieu of a bench trial or a stipulated facts trial, ER-26–27, 28, 37–38, 39;

- Filed a motion to suppress and contested a special allegation, ER-38;

- Had prior convictions, ER-39–40.

As the citations to this list show, the district court's most

frequently cited reason for denying the adjustment was that

Mr. Gambino-Ruiz had not sought a conditional plea or a bench trial.

ER-26–27, 28, 37–38, 39. But this is not one of the "appropriate

considerations" listed in the commentary. U.S.S.G. § 3E1.1 n.1. A judge

"err[s] as a matter of law" by denying an acceptance adjustment on the

basis of factors that do not govern the analysis. *Tuan Ngoc Luong,* 965

F.3d at 992 (reversing denial of acceptance adjustment when court

improperly relied on defendant's jurisdictional and "good-faith challenges at trial").

Furthermore, the district court focused almost exclusively on the absence of *post-trial* statements, remarking that "a jury's found him guilty, but where's the acceptance of responsibility and contrition? Where is that? I haven't seen that." ER-25–26. Yet the commentary required the court to base its determination "primarily upon [Mr. Gambino-Ruiz's] *pre-trial* statements and conduct." U.S.S.G. § 3E1.1 n.2 (emphasis added). And Mr. Gambino-Ruiz's pre-trial statements "truthfully admitt[ed] the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1 n.1(A); ER-27. Thus, the district court considered the wrong statements and the wrong factors to deny the adjustment.

Even as the district court considered the wrong statements and factors, it declined to consider the "appropriate factors" listed in U.S.S.G. § 3E1.1 n.1. For instance, Mr. Gambino-Ruiz explained that he:

- Went to trial to "preserve his 1326(d) motion," ER-26;

- Did not "contest any specific element during his trial," ER-26;

46

- Only had a "one-day trial," ER-27, 29;

- "[S]tipulated to his fingerprints," which "saves Government resources," ER-27;

- "[D]idn't testify" on his own behalf, ER-27;

- "[A]dmitted to the elements of the offense" in a post-arrest statement, ER-27;

Yet the district court cited almost none of these factors in Mr. Gambino-Ruiz's favor. ER-26–40. The few it *did* mention were undervalued when compared to the wrong factors. For instance, almost immediately after his arrest, Mr. Gambino-Ruiz "admitted to the elements of the offense." ER-27. Admitting one's acts "immediately upon [one's] arrest" supports an acceptance of responsibility adjustment. *United States v. Mohrbacher*, 182 F.3d 1041, 1052 (9th Cir. 1999). But the court appeared to give this fact no weight, even as it was relying on Mr. Gambino-Ruiz's *post*-trial statements. ER-25–26 (stating that "a jury's found him guilty, but where's the acceptance of responsibility and contrition? Where is that? I haven't seen that").

A decision on an acceptance-of-responsibility adjustment receives deference "as long as we can determine that the district court considered the defendant's objections and did not rest its decision on

impermissible factors." *Mohrbacher*, 182 F.3d at 1052. Here, however, the court rested its decision on impermissible factors, not the commentary's listed factors. ER-26–40. "Although [Mr. Gambino-Ruiz] did not plead guilty, the district court was still obliged to assess his conduct in light of the 'appropriate considerations' listed in the application notes." *McKinney*, 15 F.3d at 853 n.8 (quoting U.S.S.G. § 3E1.1 n.1). Because it did not, this Court must remand with instructions to correctly apply the § 3E1.1 factors.

## CONCLUSION

For these reasons, the Court should reverse the district court's denial of Mr. Gambino-Ruiz's motion to dismiss the indictment and remand with instructions to vacate his conviction. Alternatively, the Court should remand for resentencing with instructions for the district court to apply the appropriate Guidelines factors in a new acceptance-of-responsibility determination.

Respectfully submitted,

*/s/ Kara Hartzler*

DATED:    October 18, 2022    KARA HARTZLER
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Defendant-Appellant

## CERTIFICATE OF RELATED CASES

Counsel is not aware of any related case that is currently pending

before the Court.

Respectfully submitted,

*/s/ Kara Hartzler*

DATED:    October 18, 2022        KARA HARTZLER
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California   92101-5030
Telephone: (619) 234-8467

Attorneys for Defendant-Appellant

# CERTIFICATE OF COMPLIANCE

PURSUANT TO FED R. APP. 32(A)(7) AND CIRCUIT RULE 32-1 FOR CASE
NUMBERS 21-50303, 21-50305

I certify that:

**X**        Pursuant to Fed. R. App. P. 32(a)(7) and Ninth Circuit Rule 32-1, the attached opening brief is:

**X**        Proportionately spaced, has a typeface of 14 points or more and contains <u>8,810</u> words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words).

DATED:    October 18, 2022        */s/ Kara Hartzler*
                        KARA HARTZLER
                        Federal Defenders of San Diego, Inc.